# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE TERESA GUIDICE,<br><br>Debtor<br><br>JOHN SYWILOK, Trustee, and TERESA GUIDICE, Debtor,<br><br>Appellees,<br><br>and<br><br>JAMES A. KRIDEL, JR.,<br><br>Appellant. | Civil Action No.: 16-9444 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Appellant James A. Kridel, Jr.'s Notice of Appeal of the Bankruptcy Court's Order Approving Settlement and Order Partially Granting Motion to Intervene. (ECF No. 1). Appellees John Sywilok ("Trustee") and Teresa Guidice ("Debtor") have submitted an opposition to the appeal, (ECF No. 6), which Appellant has replied to (ECF No. 11). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies the Appellant's Bankruptcy Appeal and affirms the Bankruptcy Court.

# BACKGROUND[1]

On July 28, 2015, Debtor filed a Complaint in the Superior Court of New Jersey alleging that Appellant committed malpractice in the legal representation of Debtor. (*See* Bankr. No. 09-39032 ("Bankruptcy Action"), ECF No. 180-3 at ¶¶ 1-2). Namely, Appellant was negligent in the preparation and amendments of Debtor's Chapter 7 bankruptcy petition. (*See* id. at ¶¶ 88-161). Debtor's Complaint alleges that on June 30, 2010, Trustee filed a complaint in Bankruptcy Court objecting to Debtor's Chapter 7 bankruptcy discharge. (Id. at ¶ 178). The Trustee's three count complaint alleged various concealments and falsities made before and during the Debtor's petition for Bankruptcy. (Id. at ¶¶ 179-81). Debtor alleges in the state Court action Trustee's complaint was the result of Appellant's negligence. (Id. at ¶ 182).

In March of 2011, while the action between Debtor and Trustee was pending, Debtor became the subject of a federal grand jury investigation for mortgage and bankruptcy fraud. (Id. at ¶¶ 207, 209). Debtor alleges that in relation to the investigation, Appellant concealed conversations with the United States Government, and failed to explain the import of a "Target Letter" or advise her of the necessity to retain a criminal defense attorney. (Id. at ¶¶ 207-12). On December 15, 2011, Debtor waived her bankruptcy discharge, asserting that the waiver was inevitable due to Appellant's negligence. (Id. at ¶ 255). Ultimately on March 4, 2014, Debtor pled guilty, and on October 2, 2014, Debtor was sentenced to fifteen months of incarceration. (Id. at ¶¶ 296-97). Debtor alleges that her incarceration was the result of Appellant's negligent legal representation of her. (Id. at ¶ 4).

On April 29, 2016, Trustee moved to reopen the Bankruptcy Action after learning of the

---

[1] This background is derived from the Bankruptcy Record which the parties have designated and submitted to this Court. (ECF Nos. 2, 5).

above Malpractice Action. (*See* Bankruptcy Action, ECF No. 177). Trustee's motion was successful, and the Bankruptcy Action was reopened before Judge Meisel. (*See* Bankruptcy Action, ECF No. 188). On July 12, 2016, Debtor requested that the parties be sent to mediation due to a dispute between Trustee and Debtor as to the ownership of the claims in the Malpractice Action. (*See* Bankruptcy Action, ECF No. 211). Judge Meisel ordered the parties to participate in mediation and appointed Judge Joel Pisano, U.S.D.J. (ret.) as the mediator. (*See* Bankruptcy Action, ECF No 225).

On October 5, 2016, the parties reached a settlement. (*See* Bankruptcy Action, ECF No. 240). As a part of the settlement, Debtor was entitled to 55% of the net proceeds from the Malpractice Action and her Bankruptcy Estate would receive the remaining 45%. (Id.). The portion assigned to the Bankruptcy Estate would be distributed in due course by Trustee and pursuant to the Bankruptcy Code. (Id.). On November 1, 2016, Trustee submitted a Motion to the Bankruptcy Court to approve the settlement, on notice to Appellant as well as to all Debtor's creditors. (*See* Bankruptcy Action, ECF Nos. 240-242). No creditor filed an objection to Trustee's Motion. (*See generally* Bankruptcy Action).

On November 22, 2016, Appellant filed an Objection to Trustee's Motion as well as a Cross-Motion to intervene in the Bankruptcy Action. (*See* Bankruptcy Action, ECF No. 249). The Bankruptcy Court partially granted Appellant's Motion to Intervene for the sole purpose of hearing him with regards to the issue of a conflict of interest between counsel for Debtor and Trustee, Mr. Carlos J. Cuevas, Esq., and the law firm of Brach Eichler, LLC, respectively. (*See* Bankruptcy Action, ECF No. 257). Thereafter, Judge Meisel ruled that Appellant lacked standing to challenge the settlement. (*See* Bankruptcy Action December 6, 2016 Transcript ("Dec. 6 Tr.") 24:9-15). In

so ruling, Judge Meisel cited *Whitemore v. Arkansas*, 495 U.S. 149 (1990), which stands for the premise that "a party seeking Constitutional standing must demonstrate an injury in fact that is concrete, distinct and palpable and actual or imminent." (Id. 20:2-6). Furthermore, Judge Meisel noted that in a Bankruptcy case, a party seeking standing must be a party-in-interest as articulated in *In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 210 (3d Cir. 2011). (Id. 20:4-16). Judge Meisel believed that Appellant did not meet the Constitutional requirement for standing because Appellant failed to show any injury that would result from the settlement agreement between Trustee and Debtor. (Id. 24:5-6).

Additionally, the Bankruptcy Court ruled that Appellant had standing to be heard on the conflict of interest issue because based on the intent of *In re Congoleum*, 46 F.3d 675 (3d Cir. 2005), attorneys have a responsibility to apprise the court of potential ethical violations. (*See* id. 22:3-22). On the issue of whether there was a conflict of interest between counsel for Debtor and Trustee, Judge Meisel acknowledged that previous to the proceeding the parties took "diametrically opposed positions as to what was property of the estate and what wasn't property of the estate, namely, the cause of action." (Id. 32:9-12). Nevertheless, Judge Meisel believed that if she approved the settlement agreement, then the parties' interests would align into one, which would be to successfully pursue the Malpractice Action against Appellant. (Id. 32:14-20). After ruling that the parties did not hold an adverse interest in violation of the New Jersey Code of Professional Conduct Rule 1.7, the Bankruptcy Court analyzed the contours of 11 U.S.C. § 327(e). (Id. 34:5-15). The Bankruptcy Court ruled that the retention was not in violation of 11 U.S.C. § 327(e) because it was for a particular purpose and the retained attorney's do not "need to show that they're disinterested[]" parties. (Id.).

4

Thereafter, the Bankruptcy Court heard argument on the issue of the settlement. (*See* id. 34:35, 35:1-2). At that point, Appellant attempted to be heard on the issue of the settlement agreement, but Judge Meisel reasserted her limited grant of standing. (*See* id. 43:4-10). Judge Meisel only permitted Appellant to be heard on the issue of the settlement agreement to raise it as an example of the alleged conflict of interest. (*See* id. 43:11-13). Accordingly, the Bankruptcy Court did not consider that argument as part of the approval of the settlement but rather considered the settlement under the factors set forth under *In re Martin*, 91 F3d 389 (3d Cir. 1996). (*See* Bankruptcy Action December 9, 2016 Transcript 22:12-18). The Bankruptcy Court ultimately approved the settlement, finding that it was fair and equitable, and that it further did not constitute an improper assignment of a tort claim. (*See* Bankruptcy Action, ECF No. 261). That same Order also found that "[t]he 14 day stay contained in Federal Rule of Bankruptcy Procedure 4001(a)(3) is inapplicable." (*See* id.). Thus, the Malpractice Action was allowed to proceed in due course.

Appellant now appeals the decisions of the Bankruptcy Court to grant only partial intervention and to approve the settlement. (Bankruptcy Action, ECF No. 262 at 2). Specifically, Appellant asserts four errors. (ECF No. 3 at 2). First, Appellant challenges the Bankruptcy Court's failure to determine the ownership of the Malpractice Action. (Id.). Second, Appellant claims that the Bankruptcy Court erred in vacating the stay in state court on the Malpractice Action. (Id.).[2] Third, Appellant challenges the determination of the Bankruptcy Court that there was no conflict of interest between counsel for Debtor and Trustee. (Id.). Fourth, Appellant challenges the determination of the Bankruptcy Court that the settlement was not an assignment of the Malpractice Action from Trustee to Debtor. (Id.).

---

[2] This issue has already been disposed of by this Court's Order and Opinion dated May 1, 2017. (ECF Nos. 18, 19).

For the reasons set forth below, this Court only analyzes the issues of standing and the conflict of interest, and affirms Judge Meisel's rulings.

## **LEGAL STANDARD**

### I. Standard of Review

A district court reviews a bankruptcy court's legal conclusions under *de novo* review. *See In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 209 (3d Cir. 2011). "A court's decision regarding standing is a legal conclusion subject to *de novo* review." *Id.* The disqualification of a law firm is reviewed for an abuse of discretion. *See In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 470 (3d Cir. 1998). An abuse of discretion is a deferential standard, and reversal requires this court to find that the decision of the bankruptcy court rested on "a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Nutraquest*, 434 F.3d 639, 645 (3d Cir. 2006).

### II. Standing

To intervene in a bankruptcy action, a party must have at the minimum constitutional standing. *See In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 210 (3d Cir. 2011). Constitutional standing exists where a party shows that the party has suffered an injury-in-fact. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). An injury-in-fact "must be concrete in both a qualitative and temporal sense." *Id.* In addition, an alleged injury "must be distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical." *Id.* Moreover, an alleged injury "need not be financial and only need[s] to be fairly traceable to the alleged illegal action." *In re Congoleum Corp.*, 426 F.3d 675, 685 (3d Cir. 2005). Indeed, a favorable decision must be likely to cure the alleged injury. *Whitmore v.*

*Arkansas*, 495 U.S. 149, 155 (1990). "The contours of the injury-in-fact requirement, while not precisely defined, are very generous." *Bowman v. Wilson*, 672, F.2d 1145, 1151 (3d Cir. 1982).

In a bankruptcy proceeding, a party seeking standing must be a party-in-interest as stated under 11 U.S.C. § 1109(b). *See* 11 U.S.C. § 1109 (b); *In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 210-11 (3d Cir. 2011). Nevertheless, the requirement of a party-in-interest must be "construed broadly" as "effectively coextensive" with constitutional standing. *See In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 211 (3d Cir. 2011). Therefore, the appropriate test for standing in a bankruptcy proceeding is the injury-in-fact requirement. *Id.* at 210. Of course, "[a] party denied standing to sue, or to intervene, or to object, may obviously appeal such a determination." *See In re Pittsburgh & Lake Erie R.R. Co. & Sec. & Antitrust Litig.*, 543 F.2d 1058, 1064 (3d Cir. 1976).

Further, the New Jersey Constitution provides that "[t]he Superior Court shall have original general jurisdiction throughout the State in all causes." *See* N.J. Const. Art. VI, § 3, ¶ 2. This broad grant of jurisdiction, however, may be limited by the Supremacy Clause of the United States Constitution. *See* U.S. Const. Art. VI, cl. 2. Therefore, where the United States Congress grants to the federal courts the exclusive jurisdiction over a certain subject-matter, then a state court cannot practice jurisdiction over that subject-matter. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 454 U.S. 473, 478 (1981).

Moreover, unless otherwise provided, "the district courts shall have exclusive jurisdiction of all cases under title 11." *See* 28 U.S.C. § 1334(a). Chapter 7 bankruptcy actions fall under title 11 of the United States Code. *See* 11 U.S.C. §§ 301-66. Nevertheless, where a state legal malpractice claim is based on an alleged error in a bankruptcy action under the exclusive

jurisdiction of the federal courts, then that does not necessitate the practice of exclusive jurisdiction over the state legal malpractice claim. *See Gunn v. Minton*, 133 S.Ct. 1059, 1065 (2013) (holding state legal malpractice claim based on alleged error in patent proceeding does not fall under exclusive jurisdiction); *Laures v. Wolf Haldenstein Adler Freeman & Herz, L.L.P.*, 2015 WL 10434722, \*5. The question is whether the state legal malpractice claim falls under title 11 of the United States Code. *See Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013). Nowhere under title 11 of the United States Code provides for such an interpretation. *See generally* 11 U.S.C. §§ 301-66. Moreover, where a cause of action, like a state legal malpractice claim, is the property of the estate, there is no indication that Chapter 7 of the Bankruptcy Code confers exclusive jurisdiction to the federal courts over those causes of action. *See generally* 11 U.S.C. §§ 301-66.

### III. Conflict of Interest

Under the New Jersey Code of Professional Conduct Rule 1.7, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." *See* N.J. Rules of Prof'l Conduct ("N.J. Rules") R. 1.7(a). A concurrent conflict of interest exists under two circumstances. (*See id.*). First, it exists where "the representation of one client will be directly adverse to another client[.]" *See* N.J. Rules R. 1.7(a)(1). Second, it exists where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer." *See* N.J. Rules R. 1.7(a)(2). Notwithstanding, the affected parties to a concurrent conflict of interest may waive the concurrent conflict of interest. *See* N.J. Rules R. 1.7(b).

Moreover, in bankruptcy court, 11 U.S.C. § 327(e) provides that a trustee "may employ, for a specified special purpose, . . . an attorney that has represented the debtor, if in the best interest

8

of the estate," and if there is no conflict of interest between the attorney and the debtor or estate. *See* 11 U.S.C. § 327(e). Unlike 11 U.S.C. § 327(a), § 327(e) does not have a requirement that the employed attorney be a disinterested person. *See In re Congoleum Corp.*, 426 F.3d 675, 688-89 (3d Cir. 2005).

## ANALYSIS

### I. Appellant Lacks Standing to Challenge the Settlement Agreement

Appellant's challenges the Bankruptcy Court's failure to determine the ownership of the Malpractice Action, decision to vacate the stay in state court on the Malpractice Action, and determination that the settlement was not an assignment of a tort claim. These three challenges rest on the validity of the settlement agreement. Therefore, for Appellant to win, this Court must first decide that Appellant has standing to challenge the approval of the settlement agreement. If this Court finds that Appellant has standing, then second, this Court must decide that the approval of the settlement agreement was an abuse of discretion. Appellant fails from the outset. This is because Appellant has failed to show that the approval of the settlement agreement caused an injury-in-fact to Appellant, even by the liberal injury-in-fact standard. Assuming, arguendo, that Judge Meisel erred in approving the settlement agreement, Appellant suffers no injury from this.

Appellant argues that he has standing because if the Malpractice Action belongs exclusively to the estate, then New Jersey Superior Court does not have subject matter jurisdiction. (*See* ECF No. 11 at 3). Appellant claims that the settlement agreement between Debtor and Trustee impermissibly conferred subject matter jurisdiction to the New Jersey state court, and because "[he] has personal assets [] at stake in the [state court] lawsuit," he suffers injury and thus has standing. (Id. at 4). This assertion requires the Appellant to first prove that the approval of the

settlement agreement conferred subject matter jurisdiction on the New Jersey Superior Court. Second, Appellate must prove that conferring subject matter jurisdiction on the New Jersey Superior Court is an injury-in-fact sufficient to give rise to standing. Appellant fails to meet the first element thereby making analysis of the second element unnecessary.

Debtor filed the Malpractice Action against Appellant in the New Jersey Superior Court, (*see generally* Bankruptcy Action, ECF No. 180-3), which is a Court of general and concurrent jurisdiction. Although the alleged Malpractice Action is based on Appellant's alleged malpractice in a Chapter 7 bankruptcy proceeding, (*see* id. at ¶¶ 1, 2), and Chapter 7 bankruptcy actions are under the exclusive jurisdiction of the federal courts, (*see* 28 U.S.C. § 1334(a)), a legal malpractice claim is not under the exclusive jurisdiction of the federal courts. *See Gunn v. Minton*, 133 S.Ct. 1059, 1065 (2013). Moreover, even if the Malpractice Action belongs exclusively to the estate, there is no law that Appellant cites to that would indicate that Trustee cannot independently bring suit in the New Jersey Superior Court based on the alleged malpractice.

Appellant, in his reply, relies on *Laures v. Wolf Haldenstein Adler Freeman & Herz, L.L.P.*, 2015 WL 10434722 (2005), for the proposition that the New Jersey Superior Court will not practice jurisdiction over a malpractice claim if it stems from a case under the exclusive jurisdiction of the federal courts. (ECF No. 11 at 5-6). *Laures*, however, does not stand for such a proposition. *See generally Laures v. Wolf Haldenstein Adler Freeman & Herz, L.L.P.*, 2015 WL 10434722. Rather, *Laures* recognized that "[n]o one can seriously dispute that such expansive authority [of a State Court] includes the authority to resolve legal malpractice claims[]" even where those claims stem from cases under the exclusive jurisdiction of the federal courts. *Id.* at *5. Although Appellant is correct that the court *Laures* reversed the lower Court for the practice of

jurisdiction, that reversal was based on an order from United States District Court for the Eastern District of Michigan retaining exclusive jurisdiction over all matters relating to the action in that case. *See id.* Indeed, "under the doctrine of comity[,] the Law Division should have declined to hear the action until plaintiff first sought relief in the federal court." *Id.* at *6.

Here, there is no order from the Bankruptcy Court retaining exclusive jurisdiction over all matters relating to the Bankruptcy Estate. (*See generally* Bankruptcy Action). Rather, the Bankruptcy Court found that "[t]he 14 day stay contained in Federal Rule of Bankruptcy Procedure 4001(a)(3) is inapplicable" thus indicating that it would not practice exclusive jurisdiction over the Malpractice Action. (*See* Bankruptcy Action, ECF No. 261). Based on the aforementioned analysis, Appellant lacks standing to challenge the settlement agreement. Thus, Appellant cannot challenge the Bankruptcy Court's failure to determine the ownership of the Malpractice Action, decision to vacate the stay in state court on the Malpractice Action, and determination that the settlement was not an assignment of a tort claim.

## II. Counsel for Debtor and Trustee Are Not Under a Conflict of Interest

Appellant asserts that the Bankruptcy Court erred in its determination that there was no conflict of interest between counsel for Debtor and Trustee, Mr. Carlos J. Cuevas, Esq., and the law firm of Brach Eichler, LLC, respectively. (*See* ECF No. 3 at 2). For reversal, Appellant must prove that it was an abuse of discretion for the Bankruptcy Court to so order. *See In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 470 (3d Cir. 1998). Appellant argues that there is a conflict of interest between counsel for Debtor and Trustee "by virtue . . . [of] the positions they have advocated and continue to advocate . . . ." (*See* ECF No. 3 at 21). It is true that Debtor and Trustee have opposed one another up until the settlement and have specifically litigated the

11

reopening of the Bankruptcy Action and the ownership of the Malpractice Action. (*See* ECF No. 3 at 21-24). Appellant further argues that, contrary to Judge Meisel's belief that the settlement agreement aligned the parties' interests, there is still a conflict of interest because the ownership of the Malpractice Action is left unresolved, which will cause later litigation that is not in the best interest of the estate. (*See* id. at 24). This Court does not determine whether that is true or not, but assuming it is, Appellant fails to explain how 11 U.S.C. § 327(e) does not resolve this potential issue.

Under 11 U.S.C. § 327(e), counsel for Debtor and Trustee are only employed for the "specified special purpose" to prosecute the Malpractice Action. *See* 11 U.S.C. § 327(e); Bankruptcy Action, ECF No. 261. Debtor and Trustee only have one interest in the Malpractice Action, which is to be successful in prosecution. Even if Appellant is correct, that the ownership of the Malpractice Action is left unresolved, the pending Malpractice Action in the New Jersey Superior Court has no bearing on the actual ownership of the Malpractice Action. That issue, if later litigated, would be for the Bankruptcy Court to determine, and counsel for Debtor and Trustee are not retained for both parties in the Bankruptcy Action. Therefore, counsel for Debtor and Trustee, the subject attorney and law firm, do not hold an adverse interest to either Debtor or Trustee and thus do not violate New Jersey Code of Professional Conduct Rule 1.7 or 11 U.S.C. § 327(e).

In addition, the slight disparity the net proceeds to Debtor and Trustee in the settlement agreement, i.e., 55% of the net proceeds going to Debtor and 45% of the net proceeds going to Debtor's Bankruptcy Estate, is not in violation of 11 U.S.C. § 327(e). This is because 11 U.S.C. § 327(e) does not have a requirement that the employed attorney be a disinterested person. (*See*

11 U.S.C. §327(e); *In re Congoleum Corp.*, 426 F.3d 675, 688-89 (3d Cir. 2005)). Therefore, the Bankruptcy Court did not abuse its discretion in its determination that counsel for Debtor and Trustee, Mr. Carlos J. Cuevas, Esq., and the law firm of Brach Eichler, LLC, do not have a conflict of interest.

## **CONCLUSION**

For the reasons above, the Court denies the Appellant's Bankruptcy Appeal and affirms the Bankruptcy Court on all issues. An appropriate Order accompanies this Opinion.

DATED: June 1̲2̲, 2017

_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE